IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRINITY INDUSTRIES, INC. and TRINITY INDUSTRIES RAILCAR CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>GREENLEASE HOLDING COMPANY and AMPCO-PITTSBURGH CORPORATION,<br><br>Defendants. | CIVIL ACTION NO. 08-1498 |

**MEMORANDUM OPINION AND ORDER**

CONTI, District Judge

Based upon consideration of the motion for judgment on the pleadings (the "motion") (Docket No. 28), filed by Greenlease Holding Company and Ampco-Pittsburgh Corporation[1] (collectively "defendants" or "Greenlease"), the brief in support thereof (Docket No. 29), the response (Docket No. 30) filed by Trinity Industries, Inc. and Trinity Industries Railcar Corporation [2] (collectively "plaintiffs" or "Trinity"), the brief in support thereof (Docket No. 31), the exhibits attached thereto, defendants' reply brief (Docket No. 37), and arguments made by

---

[1] Greenlease Holding Company is a wholly-owned subsidiary of Ampco-Pittsburgh Corporation, the corporate parent of Greenlease Holding Company. (Docket No. 10.)

[2] Trinity Industries, Inc. is a holding company with a subsidiary group that includes: The Trinity Rail Group, Trinity Railcar Leasing and Management Services Group, Inland Barge Group, Construction Products Group, and Energy Equipment Group. Trinity Industries Railcar Corporation appears to be a subsidiary or affiliate of Trinity Industries, Inc. and its business is the disposition and acquisition of railcar properties and real estate. (Docket No. 2.)

counsel at the hearing on the motion held on December 14, 2009, the court will deny defendants' motion for the reasons set forth on the record and in this Memorandum Opinion and Order.

## I. Standard of Review

The court must decide, as a matter of law, whether Trinity's claims against Greenlease can be dismissed by a motion for judgment on the pleadings. DiCarlo v. St. Mary Hosp., 530 F.3d 255 (3d Cir. 2008). The court must accept as true all well-pled allegations of fact in the pleadings and draw every reasonable inference in favor of the party against whom judgment is sought. Id. at 262-63 (3d Cir. 2008) (finding that the standard for deciding a motion for judgment on the pleadings is the same as for deciding a motion pursuant to Rule 12(b)(6)); Churchill v. Star Enters., 3 F. Supp.2d 625, 627 (E.D. Pa. 1998) (citing FED. R. CIV. P. 12(c)). In ruling on a motion for judgment on the pleadings, a district court generally may not consider matters extraneous to the pleadings. An exception to the general rule, however, allows a court to consider documents integral to or explicitly relied upon in the complaint without converting the motion into one for summary judgment. Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251 (3d Cir. 2004). The court may consider matters of public record and authentic documents, attached to complaint or motion, upon which the complaint is based. Churchill, 3 F. Supp.2d at 627.

"The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367, at 207-08 (3d ed. 2004). Courts disfavor motions for judgment on the pleadings and apply a very restrictive standard when ruling on such motions. Id. § 1368 at 222-23.

## II. Background

Greenlease operated a railcar manufacturing facility (the "Property") located in Mercer County, Pennsylvania from the 1920s until 1986 when it sold the property to Trinity pursuant to a December 9, 1986 Purchase and Sale Agreement (the "Agreement"). Trinity owned and continued to operate the Property from 1986 until 2000. Trinity ceased operations at the Property in 2000 and sold the Property in February 2004.

In April 2006, the Commonwealth of Pennsylvania filed criminal charges against Trinity concerning contamination related to the storage, transport, and disposal of waste on the Property. Trinity entered into a Consent Order and Agreement and Plea Agreement with the Commonwealth and undertook response activities at the Property or made payments related to the investigative and response activities at the Property.

Trinity's complaint includes statutory claims against Greenlease under §§ 107 and 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERLCA"), 42 U.S.C. §§ 9607, 9613; § 7002(a)(1)(B) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B); sections 701, 702, 705(c)(2), and 1101 of the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), 35 PA. STAT. ANN. §§ 6020.701, 6020.702, 6020.705(c)(2), 6020.1101; and state common law claims for contribution and negligence per se. Greenlease in essence argues that there is an indemnification provision in the Agreement which requires that judgment be entered in favor of Greenlease with respect to all claims asserted by Trinity. Greenlease asserts that the provisions contained in sections 9.03 and 9.04 of the Agreement comprehensively allocated the environmental liabilities between the parties and Trinity assumed the liabilities at issue.

## III. Discussion

Federal courts look to state law in interpreting or construing indemnification provisions in agreements concerning CERCLA liability. See Hatko Corp. v. W.R. Grace & Co.-Conn., 59 F.3d 400 (3d Cir. 1995) (under CERCLA, agreements to indemnify or hold harmless with respect to CERCLA liability are enforceable between contracting parties) (citing Beazer East, Inc. v. Mead Corp., 34 F.3d 206, 211 (3d Cir. 1994)). The parties agreed that Pennsylvania law would be used to interpret the parties' intent concerning the Agreement. Pursuant to Pennsylvania law, all provisions in an agreement should be construed together and each will be given effect in determining the intent of the contracting parties. LJL Transp. Inc. v. Pilot Air Freight Corp., 962 A.2d 639 (Pa. 2009) (interpreting a franchise agreement under contract principles).

> In interpreting the language of a contract, [the court] attempt[s] to ascertain the intent of the parties and give it effect. *Crawford Central Sch. Dist. v. Commonwealth of Pennsylvania*, 585 Pa. 131, 143, 888 A.2d 616, 623 (2005)). When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement. *Steuart v. McChesney*, 498 Pa. 45, 49, 444 A.2d 659, 661 (1982), which will be given its commonly accepted and plain meaning. *J.K. Willison, Jr. v. Consol. Coal Co.*, 536 Pa. 49, 54, 637 A.2d 979, 982 (1994). Additionally, in determining the intent of the contracting parties, all provision [sic] in the agreement will be construed together and each will be given effect. *Murphy v. Duquesne Univ.*, 565 Pa 571, 591, 777 A.2d 418, 420 (2001). Thus, [the court] will not interpret one provision of a contract in a manner which results in another portion being annulled. *Capek [v. Devito*, 564 Pa. 267], at 274, 767 A.2d [1047] *at 1050 [Pa. 2001.]*

Id. at 647- 48.

Relevant sections of the Agreement between Trinity and Greenlease are:

> Section 2.03. Assumption of Certain Contract and Liabilities. . . . [Trinity] has not assumed, and expressly denies assumption hereby

of, any other liability, obligation or commitment of [Greenlease] other than as set forth above or otherwise expressly set forth herein.

***

Section 9.03. Indemnity for Certain Laws. [Greenlease] agrees to indemnify and hold harmless [Trinity] against Damages arising out of or related to violations of Environmental Laws, which were caused by [Greenlease] or its predecessors in title to the assets at the Greenville Facility on or prior to the date of Closing. [Trinity] agrees to indemnify and hold harmless [Greenlease] against Damages arising out of related to violations of Environmental Laws, which are caused by [Trinity] or it successors in title to the assets at the Green Facility after the dated of the Closing. It is the intention of the parties that liability under this Section for any condition that is caused by the acts of [Greenlease] or its predecessors in title to the assets prior to the date of the Closing and by the acts of [Trinity] or its successors in title to the assets after the date of Closing shall be allocated between the parties in a just manner taking into account degree of fault, period of violation and other relevant factors.

***

Section 9.04. Survival. Each of the foregoing indemnities shall survive and continue in force after the transfer of the Subject Assets to [Trinity] for a period ending on the third anniversary of the date of the Closing; provided, however, that (I) the foregoing limitation shall not apply to any Circumstances for which the party seeking indemnification has given notice to the Indemnifying Party pursuant to Section 9.05 prior to the third anniversary of the date of the Closing.. . .

***

Section 11.13. Governing Laws. This Agreement shall be construed in accordance with and governed by the laws of the State of Pennsylvania.

***

> Section 11.19. Non-waiver of Remedies. . . . The rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies which the parties hereto may otherwise have at law or in equity.

(Agreement, Docket No. 31-2 at 4, 37, 38, 49, 50.)

The threshold issue in resolving contractual disputes is whether the provisions of the contract in issue contain an ambiguity. The United States Court of Appeals for the Third Circuit discussed ambiguity in the context of an agreement in Great American Insurance Co. v. Norwin School District, 544 F.3d 229 (3d Cir. 2008).

> A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.. . . when applied to a particular set of facts.. . . The meaning of an unambiguous written instrument presents a question of law for resolution by the court.

Id. at 243.

Here, the court finds that the language at issue in the Agreement is clear and unambiguous because it is not reasonably susceptible of different constructions nor capable of being understood in more than one sense. Id. Therefore, the plain meaning of the contract will be enforced. LJL Transp., 962 A.2d at 647-48. All provisions in the agreement will be construed together and each will be given effect. Id. The court will not interpret one provision of the agreement in a manner which results in another portion being annulled. Id.

The language of section 2.03 providing that "[Trinity] has not assumed, and expressly denies assumption hereby of, any other liability, obligation or commitment of [Greenlease] other than as set forth above or otherwise expressly set forth herein" clearly indicates that the parties did not intend Trinity to assume the environmental liabilities of Greenlease at issue in the instant case. The language of section 9.03 providing that, "[Greenlease] agrees to indemnify and hold

harmless [Trinity] . . .[and] . . . [Trinity] agrees to indemnify and hold harmless [Greenlease]", and the language of section 9.04 providing that the indemnity survives for a period of three years, clearly indicates the parties intended that there would be a mutual three-year indemnity and hold harmless provision. These provisions, however, must be construed together with the nonwaiver of remedies provision set forth in section 11.19, which provides that "[t]he rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies which the parties hereto may otherwise have at law or in equity". (Agreement, Docket No. 31-2 at 4, 37, 38, 50.)

Greenlease points to several decisions to support the argument that the court should grant the motion for judgment on the pleadings. Greenlease argues that the indemnification provision of the Agreement was comprehensive and that no environmental claims or claims for contribution under CERLCA could be asserted after the three-year survival period. Essentially, Greenlease views the indemnity provision as a release. Greenlease relies on Horsehead Industries, Inc. v. Paramount Communications, Inc., 258 F.3d 132, 143, 145-46 (3d Cir. 2001), to support the argument that the parties contractually allocated the environmental liabilities. The court in Horsehead noted, however, that the indemnification provision at issue in that case was "considerably broad" showing a "clear and unmistakable intent to include all environmental claims, including claims for contribution under CERCLA". Id., at 144-45. The entity Horseheads Industries, Inc. was specifically formed "for the purpose of transferring the environmental liability associated with the . . . site." Id. at 145. There was no reference in the decision to a nonexclusive remedies provision similar to the language contained in section 11.19 of the Agreement.

Greenlease's reliance upon Lion Oil Co., Inc. v. Tosco Corp., 90 F.3d 268 (8th Cir. 1996), and Keywell Corp. v. Weinstein, 33 F.3d 159 (2d Cir. 1994), is misplaced because the agreements discussed in those decisions contained release provisions,` as well as indemnification provisions. See Lion Oil, 90 F.3d at 269; Keywell, 33 F.3d at 162. Here, the Agreement does not contain a release provision. Greenlease's reliance on Armotek Industries v. Freedman, 790 F. Supp. 383 (D. Conn. 1992), is also not directly on point. The court in Armotek concluded that the indemnification provisions of the agreement discussed in that case were sufficiently specific to indicate that the parties intended the plaintiff to assume the defendants' CERCLA and other environmental liabilities. Armotek, 790 F. Supp. at 391-92. The agreement in Armotek, however, did not include an express provision denying the assumption of liabilities, as set forth in the section 2.03 of the Agreement, and did not include a provision for the nonwaiver and cumulative nature of remedies, as set forth in section 11.19 of the Agreement.

In LJL Transport, the Pennsylvania Supreme Court considered similar circumstances in interpreting a franchise agreement under contract principles. The issue before the court in LJL was whether a party's conduct in breaching a contract justified its immediate termination, even if the contract included an express provision granting the breaching party the right to cure before the contract was terminated. The appellants - the franchisee and its owners - argued that the terms of the agreement in issue gave the franchisee an unqualified right to cure a breach, pursuant to paragraph 23(c) of the contract in issue which provided:

> *Cure.* This Agreement immediately terminates upon receipt by Franchisee of written notice of termination from Pilot. Pilot shall allow Franchisee an opportunity to cure a default within ninety (90) days of receipt of written notice of a particular default.

LJL Transp., 962 A.2d at 643.

The franchisor, Pilot Air Freight Corp. ("Pilot"), argued that the cure provisions were not the exclusive means by which the agreement could be terminated and that the parties intended cumulative remedies. Pilot pointed to the provisions in paragraph 30 of the agreement which provided:

> Pilot's failure to insist upon strict compliance with any provision of this Agreement shall not be a waiver of its right to do so, any law, custom, usage or rule to the contrary notwithstanding. Delay or omission by Pilot respecting any breach or default shall not affect its rights respecting any subsequent breaches or defaults. **Pilot's election to exercise any remedy available by law or contract shall not be deemed a waiver of nor preclude exercise of any other remedy.**

Id. at 647.

Pilot, the franchisor, argued that when the two paragraphs of the franchise agreement were considered together, the cure provisions of paragraph 23(c) were merely a cumulative remedy and not an exclusive one.

The court in LJL Transport agreed.

> A plain reading of the entire agreement indicates that paragraph 23)(c) is not the exclusive means by which the agreement could be terminated. To the contrary, paragraph 30 can be fairly read as an express reservation by Pilot of the right to exercise all remedies available to it after a breach of the agreement by LJL, including its inherent power to terminate the contract without notice in the event of a vital and essential breach. *Larken [Inc. v. Larken Iowa City Ltd. P'ship],* 589 N.W.2d [700] at 702 [Iowa, 1998] (inclusion of additional clause specifying parties retained other remedies at law and equity indicated notice and cure provisions of franchise agreement were not the only remedy available to a party in the event of a material breach). Paragraph 23(c) must therefore be considered to be a cumulative remedy not an exclusive one.

Id. at 652.

The court finds the reasoning of the Pennsylvania Supreme Court in LJL Transport persuasive. Like the agreement in LJL Transport, the Agreement in issue here contains an express reservation by Trinity of its right to exercise all remedies available to it, i.e., which it "may otherwise have at law or equity." (Agreement, section 11.19.) The relief available for breach of the indemnification provisions in sections 9.02 and 9.03 is more expansive than the relief available for the claims asserted in the complaint.[3] Construing the Agreement as a whole, the court concludes that the indemnification provisions of the Agreement contained in sections 9.02 and 9.03 are cumulative and not exclusive. To hold otherwise would in effect annul section 11.19 of the Agreement. Because the claims asserted in the complaint do not arise under the Agreement, they are considered to be rights and remedies otherwise available at law or equity and are not barred by the Agreement.

For all the reasons set forth above and on the record during the oral argument of defendants' motion, the court will DENY defendants' motion for judgment on the pleadings.

[3] For example, under the Agreement, Trinity was entitled to be held harmless for attorneys' fees. Specifically, under section 9.03 of the Agreement, Trinity is entitled to be held harmless "against Damages", which is defined in section 9.01 to include attorneys' fees.

**ORDER**

And now, this 29th day of January, 2010, the motion for judgment on the pleadings (Docket No. 28) filed by Greenlease Holding Company and Ampco-Pittsburgh Corporation is DENIED.

By the court,

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
United States District Judge