IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRINITY INDUSTRIES, INC., TRINITY INDUSTRIES RAILCAR CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 08-1498 |
| GREENLEASE HOLDING COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION**

**CONTI, Chief District Judge**

### I. Introduction

On March 28, 2016, this court in the above-entitled case—after a bench trial—issued findings of fact and conclusions of law (ECF No. 361) and, among other things, entered judgment in favor of plaintiffs Trinity Industries, Inc. and Trinity Industries Railcar Corporation (the "Trinity plaintiffs") and against defendant Greenlease Holding Company ("Greenlease") with respect to the Trinity plaintiffs' claims asserted under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. and its Pennsylvania state law counterpart, the Hazardous Sites Cleanup Act ("HSCA"), 35 PA. CONS. STAT. § 6020.101 et seq. (ECF No. 362.) The dispute between the parties in this case arose out of the contamination of real property located in Greenville, Pennsylvania, (the "North Plant") caused by the use and release of products containing hazardous substances, including lead, by Trinity Industries, Inc., Greenlease, and

1

third parties who are not parties to this litigation. The contamination in large part occurred in connection with railcar manufacturing operations at the North Plant.

Pursuant to the judgment entered March 28, 2016:

- 62% percent of the response costs incurred by the Trinity plaintiffs the during the cleanup of the North Plant, through February 2015, were allocated to Greenlease and were ordered to be paid by Greenlease; and

- a declaratory judgment was entered in favor of the Trinity plaintiffs and against Greenlease with respect to the future costs for the operations and maintenance of the North Plant, which were and would be incurred by the Trinity plaintiffs, beginning in March 2015. Sixty-two percent of the future costs for operations and maintenance of the North Plant located in Greenville, Pennsylvania, were allocated to Greenlease and ordered to be paid by Greenlease.

(ECF No. 362.)[1]

On April 25, 2016, the Trinity plaintiffs filed a motion for clarification or, in the alternative, a motion for reconsideration, of the court's findings of fact and conclusions of law issued on March 28, 2016. (ECF No. 366.) On the same date, the Trinity plaintiffs filed a brief in support of their motion. (ECF No. 367.) On May 27, 2016, Greenlease filed a brief in opposition to the Trinity plaintiffs' motion. (ECF No. 378.) The court having reviewed its findings of fact and conclusions of law and the submissions by the parties with respect to the motion for clarification will grant the motion for clarification for the reasons set forth in this opinion.

---

[1] Pursuant to the judgment, Greenlease was ordered to pay to the Trinity plaintiffs prejudgment interest at the rate set forth in 42 U.S.C. § 9607(a)(4) and 62% of the Trinity plaintiffs' litigation costs other than attorneys' fees, pursuant to Federal Rule of Civil Procedure 54(d)(1). The court entered judgment in favor of Greenlease and against the Trinity plaintiffs with respect to the Trinity plaintiffs' claims asserted under sections 701, 702, and 1101 of the HSCA. (ECF No. 362.)

## II.     Discussion

"'Although no Federal Rule of Civil Procedure specifically governs 'motions for clarification,' these motions are generally recognized and allowed by federal courts.'" Cottillion v. United Refining Co., Civ. Action No. 09-140, 2014 WL 1207527, at *2 (W.D. Pa. Mar. 24, 2014) (quoting Barnes v. District of Columbia, 289 F.R.D. 1, 13 (D.D.C. 2012)). "'The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend.'" Mathis v. Christian Heating and Air Conditioning, Inc., 91 F.Supp.3d 651, 655-56 (E.D. Pa, 2015) (quoting Resolution Trust Corp. v. KPMG Peat Marwick, Civ. Action No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993)). The court must, therefore, determine whether—as the Trinity plaintiffs contend in their motion—the court's findings of fact and conclusions of law are ambiguous or vague. Cottillion, 2014 WL 12072527, at *2 (denying motion for clarification because "there [was] nothing ambiguous or vague about the Court's order").

The court in its findings of fact and conclusions of law held that the Trinity plaintiffs failed to satisfy their burden to prove by a preponderance of the evidence that the lead contamination that required remediation at the North Plant was caused by Greenlease's painting operations at that facility. The court found that for many of the impact areas ("IA")[2] identified by the Trinity plaintiffs' expert witness, Joseph B. Gormley, Jr. ("Gormley"), the lead contamination that required remediation was caused by historic fill placed by third parties other than Greenlease or the Trinity plaintiffs. Other areas had contamination caused

---

[2]     IAs are "areas at the North Plant that were impacted by contaminants and required remediation." (ECF No. 361, Findings of Fact ("FOF") ¶ 165.)

by Trinity Industries, Inc. and Greenlease. The court—based upon the evidence presented by the parties—established an overall percentage of responsibility attributable to Trinity Industries, Inc. and Greenlease for the contamination that required remediation in the IAs. The court—based upon the expert testimony of Gormley—applied that overall percentage to the investigation, removal and remedial past costs incurred through February 2015, the constructions costs, and future costs for operations and maintenance at the North Plant. (ECF No. 361, Conclusions of Law ("COL") ¶ 136.)

The Trinity plaintiffs in their motion seek clarification with respect to:

> Greenlease's…responsibility for lead-based paint releases and whether the Court intended its Findings of Fact and Conclusions of Law (the "Findings and Conclusions") to be silent regarding environmental impacts and cost recovery attributable to those releases—or instead intended to negate both the possibility and contributory significance of the releases. The Trinity Plaintiffs construe the Findings and Conclusions to be neutral, allocating responsibility to Greenlease based on Greenlease's deposit of lead-impacted "fill" material, without regard to, but without discounting, the "commingled" lead contamination that derived from Greenlease's lead paint usage.

(ECF No. 367.) Greenlease in its brief in opposition to the motion for clarification argues that the court's "findings require no clarification or amendment" because they "plainly state that Greenlease's painting operations at the North Plant did not cause the lead contamination, and instead the Court's allocation is based solely on the lead contamination found in the fill material brought to the site by various parties over the years." (ECF No. 378 at 2.) The foregoing arguments made by the parties illustrate the court's need to clarify its findings of fact and conclusions of law, which may be construed as vague or ambiguous with respect to the relationship between Greenlease's painting operations and the costs incurred by the Trinity plaintiffs with respect to the North Plant.

4

Greenlease in its brief in opposition to the motion for clarification overlooks an important distinction made by the court in its findings of fact and conclusions of law. The court identified for each IA the cause of the lead contamination *that required remediation* and considered those findings as one of many factors in its equitable allocation of responsibility for all costs incurred and may be incurred by the Trinity plaintiffs with respect to North Plant. The court's usage of the phrase "lead contamination *that required remediation*" was intended to describe soils at the North Plant, which contained lead (or other hazardous substances) that required remedial action as opposed to soils that contained lead (or other hazardous substances) that did not require remedial action.[3] In other words, the court in its findings did not identify the *sole* source of lead contamination found in the soil at the North Plant; rather, the court—in consideration of the evidence presented during the bench trial—made findings of fact about the source of the lead contamination *that required remediation* and relied upon those findings in its equitable allocation of response costs. The court—based upon Gormley's allocation method—used the overall percentage of responsibility for the lead contamination *that required remediation* to equitably allocate the costs for all costs incurred and may be incurred by the Trinity plaintiffs with respect to the North Plant. (ECF No. 361, "Conclusions of Law" ("COL") ¶ 136.) The court did not make *any* findings about whether Greenlease's painting operations—which the court found were

---

[3] The court considered the following actions as remediation activities: "Cap-In-Place, Asphalt Re-Surfacing, Metals;" "Concrete Demolition & Crushing;" "Excavate, Pre-Condition, & Off-Site Disposal, Metals;" "Excavate & On-Site Consolidation, Metals;" "Off-Site Disposal, Metals/VOCs/SVOCs;" "Excavate & Off-Site Disposal, PCBS;" "Placement of Geotextile;" "Backfill with Imported Clean Fill;" "Topsoil & Seedling;" "Placement of DGA;" and "Asphalt Capping." (ECF No. 361, COL ¶ 137.)

5

*not* the cause of the lead contamination *that required remediation*—caused the Trinity plaintiffs to incur costs, e.g., investigatory costs, related to the cleanup of the North Plant. Even if the court was presented evidence sufficient to find that it is more likely than not that Greenlease's painting operations caused the Trinity plaintiffs to incur costs, such as investigatory costs, with respect to the North Plant, the parties did not present any evidence about how to allocate those costs among the parties.

The Trinity plaintiffs and Greenlease each presented an allocation method based in part on the cause of the lead contamination *that required remediation* in each IA, and Gormley testified that the overall percentage of responsibility for the cause of the lead contamination *that required remediation* in the IAs could be applied to all costs incurred. The court's equitable allocation, which was based in part upon (1) identifying the source of the lead contamination that required remediation in each IA, and (2) applying the overall percentage of responsibility for causing the lead contamination that required remediation in each IA to all costs incurred and may be incurred by the Trinity plaintiffs, did not include any findings of fact or conclusions of law about whether Greenlease's painting operations caused the Trinity plaintiffs to incur costs, such as investigatory costs, at the North Plant. The court clarifies that it did not determine whether Greenlease's painting operations caused the Trinity plaintiffs to incur costs with respect to the cleanup of the North Plant because the parties did not present to the court sufficient evidence with respect to that issue. The parties are, therefore, free to litigate that issue in other cases.

### III. <u>Conclusion</u>

For the foregoing reasons, the Trinity plaintiffs' motion for clarification will be GRANTED to the extent they request clarification about whether the court's findings of fact and conclusions of law include any findings of fact or conclusions of law about the relationship between Greenlease's painting operations and the costs incurred by the Trinity plaintiffs during the cleanup of the North Plant. The motion for clarification is denied in all other respects.

An appropriate order will be entered.

BY THE COURT,

Dated: July, 27, 2016

/s/ JOY FLOWERS CONTI
Joy Flowers Conti
Chief United States District Judge